[File No. 7108]

REMMEL BATTAGLER, Appellant, v. K. DICKSON, Respondent

(38 NW2d 720)

Opinion filed August 4, 1949.

*J. E. Hendrickson* and *G. L. Dosland,* for appellant.

643

*Roy K. Redetzke* and *Nilles, Oehlert & Nilles,* for respondent.

BURKE, J. In this action plaintiff sought to recover from the defendant the reasonable value of plowing four hundred acres of farm land. In his answer defendant alleged that plaintiff was obligated to plow the land without charge under the conditions of a farm lease between the plaintiff and the defendant. The action was brought on for trial before a jury in Cass County District Court. At the close of plaintiff's case, the trial court, upon defendant's motion ordered the action dismissed and judgment of dismissal was thereafter entered. Plaintiff has appealed from the judgment. There are six specifications of error, all of which are predicated upon the trial court's construction of the farm lease between the plaintiff and the defendant, and upon his rejection of parol evidence offered by the

644

plaintiff to aid a construction of the lease. Plaintiff's theory was that the lease was ambiguous, that the lease itself afforded no means of resolving the ambiguity and that therefore his offer of proof was admissible in evidence. The trial court rejected the offer upon the ground that the proposed testimony tended to vary the terms of the written lease.

Plaintiff and the defendant first met in the fall of 1945 a few days before the lease in question was signed. At that time plaintiff was looking for a farm to lease and defendant was looking for a tenant. Together they viewed defendant's farm. It consisted of 450 acres of tillable land of which 400 acres had been summer-fallowed during the 1945 season and 50 acres which had been fall plowed. Plaintiff was told by the defendant that if he leased the land he would be required to pay $4.00 per acre or $1600.00 for the summer fallowing at the time he took possession. Other matters including the amount and kind of crops to be raised and the length of the term of the lease were discussed. Plaintiff wanted a lease for a three year period. This, the defendant refused to give because he "didn't know plaintiff well enough," but he told plaintiff the lease would be renewed from year to year if plaintiff performed satisfactorily.

The lease was signed on September 12, 1945. The term of the lease was from March 1, 1946 until March 1, 1947. It is a standard, printed form crop share lease. Certain special provisions were added to the printed form in typewriting, to which reference will be made later, but no mention was made in the lease of plaintiff's agreement to pay to the defendant $1600.00 for the 1945 summer fallowing.

On March 1, 1946, however, the plaintiff paid the defendant the $1600.00 and took possession of the land. He planted crops upon the entire 450 acres, harvested and threshed them and delivered to the defendant his share of the crops according to the tenor of the lease. Thereafter he fall plowed the entire 450 acres. After the fall plowing was completed, the defendant notified plaintiff that the lease would not be renewed the following year. After the lease had terminated, plaintiff brought this

action to recover the reasonable value of plowing 400 acres in excess of the number of acres which had been fall plowed at the time he took possession of the land.

The special typewritten portions of the lease which we have mentioned above provide:

"(1) Party of the first part (plaintiff) agrees to plow back the same number of acres as is fall plowed at the time he takes possession, said work to be done in due season and in a workmanlike manner. . . ."

"(2) Second party agrees to pay first party $4.00 per acre for any summer-fallow done in the usual satisfactory manner. . . . It is hereby mutually agreed and understood that this lease is to begin March 1, 1946 and to terminate March 1, 1947. It is also mutually agreed and understood that party of the first part is to summer-fallow or plow the entire acreage covered by this lease before the expiration thereof."

The two portions of the lease above set forth are apparently contradictory. The first makes it plaintiff's obligation to plow back only the fifty acres that were fall plowed at the time he took possession. The second apparently makes it his obligation to plow or summer-fallow the entire tract. Summer-fallowing was to be paid for at the rate of $4.00 per acre but no mention is made in the lease for any compensation for plowing in excess of the fifty acres that were to be "plowed back."

Plaintiff's construction of the lease is that the sentence "It is also mutually agreed and understood that party of the first part is to summer-fallow or plow the entire acreage" relates merely to the farming practice to be followed by him, that if he summer-fallowed the land he was to be paid $4.00 per acre for the acreage summer-fallowed, and if he plowed, he was entitled to compensation for all plowing in excess of the fifty acres he had agreed to "plow back." Since the lease did not provide the amount of such compensation, he contends he is entitled to the reasonable value of the excess plowing.

Plaintiff offered to prove by parol evidence circumstances which tended to support his construction of the contract. Separate offers were made to prove the circumstances of the sign-

ing of the lease and to prove statements showing the construction given to the lease by both parties in the fall of 1946. Both offers were rejected.

The object of construing a contract is to ascertain the intention of the parties as it existed at the time of contracting. Wisner v. Field, 15 ND 43, 106 NW 38; Baird v. Fuerst, 60 ND 592, 235 NW 594. § 9-0703 ND Rev Code 1943. Where the contract is written the intention of the parties must, if possible, be ascertained from the writing alone. § 9-0704 ND Rev Code 1943. However, if a clause in a contract is of doubtful or ambiguous meaning it is proper ". . . to search for its true meaning in the light of the extraneous facts and circumstances. This rule is voiced by the Code. Section 3562 (now Sec 9-0712 NDRC 1943) reads: 'A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates.'" Hazelton Boiler Co. v. Fargo Gas & E. Co. 4 ND 365, 376, 61 NW 151. See also Halstead v. Missouri Slope Land & Invest. Co. 48 ND 220, 184 NW 284, and Baird v. Fuerst, 60 ND 592, 235 NW 594. "And where a contract is ambiguous and it is impossible to ascertain the intention of the parties thereto from the writing alone, the subsequent acts of the parties showing the construction they put upon the agreement themselves may be looked to by the court." Baird v. Fuerst, 60 ND 592, 596, 235 NW 594.

The lease we have before us in this case is ambiguous. The construction contended for by plaintiff is a possible and reasonable construction. A correct construction which is here sought would clarify the meaning of the writing, not vary it. Since the writing alone does not afford the means to reach that construction, it was error for the trial court to reject plaintiff's offers to prove the circumstances of the making of the lease and the subsequent construction placed upon the lease by the parties themselves. The judgment of the district court is reversed and a new trial granted.

NUESSLE, Ch. J., and CHRISTIANSON and MORRIS, JJ., and GRONNA, District J., concur.

BURR, J., did not participate.