Rick ANDERSON, et al., Respondents,

v.

COUNTY OF LYON, et al., Appellants.

No. A09–1979.

Court of Appeals of Minnesota.

June 22, 2010.

Gregg M. Corwin, Margaret A. Luger–Nikolai, St. Louis Park, MN, for respondents.

Ann R.M. Goering, Christian R. Shafer, Ratwik, Roszak & Maloney, Minneapolis, MN, for appellants.

Considered and decided by KLAPHAKE, Presiding Judge; MINGE, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellants challenge the district court's denial of their motion to dismiss, arguing that the district court (1) lacks subject-matter jurisdiction over respondents' claims because the claims implicate a quasi-judicial decision that is reviewable only by writ of certiorari, and (2) erred by failing to dismiss certain respondents who

lack standing. We affirm in part and reverse in part.

## FACTS

On February 3, 2009, appellant Lyon County Board of Commissioners (board) voted to modify the retiree health-insurance benefits for employees of appellant Lyon County (county) who were not yet retired. The board's decision was made after receiving the comments of several county employees who opposed any modification and after holding an open forum on the issue during which modification proposals were considered.

Respondents, a group of county employees, subsequently filed suit in district court, seeking a declaratory judgment that they are entitled to the health-insurance benefits set forth in previous employee policy manuals. Respondents also asserted breach-of-contract and promissory-estoppel claims against appellants, based on the modification of health-insurance benefits from those set forth in the employee policy manuals. Appellants moved to dismiss the complaint, asserting that the district court lacked subject-matter jurisdiction because the board's decision modifying health-insurance benefits was quasi-judicial and, therefore, reviewable only by writ of certiorari. Appellants also argued that four of the employees lacked standing to sue. The district court denied the motion to dismiss, reasoning that the board's decision was not quasi-judicial and subject only to certiorari review.[1] This appeal followed.

## ISSUES

I. Did the district court err by holding that subject-matter jurisdiction exists in district court?

II. Did the district court err by declining to dismiss certain employees from the action for lack of standing?

## ANALYSIS

### I.

■ "Subject-matter jurisdiction is defined as not only authority to hear and determine a particular class of actions, but authority to hear and determine the particular questions the court assumes to decide." *Irwin v. Goodno*, 686 N.W.2d 878, 880 (Minn.App.2004) (quotation omitted). Whether subject-matter jurisdiction exists presents a question of law, which we review de novo. *Tischer v. Hous. & Redev. Auth.*, 693 N.W.2d 426, 428 (Minn.2005).

■ A district court is a court of general jurisdiction that has, with limited exceptions, the power to hear all types of civil cases. *Irwin*, 686 N.W.2d at 880 (citing Minn. Const. art. VI, § 3). Under the Uniform Declaratory Judgments Act (UDJA), a district court has the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Minn.Stat. § 555.01 (2008). Although the UDJA is not an independent source of jurisdiction, a district court has broad jurisdiction to determine justiciable controversies regarding claims of statutory or common-law rights. *See Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617–18 (Minn.2007) (stating requirements for justiciable controversy); *Alliance for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 915–16 (Minn.App. 2003) (discussing UDJA). A district court, therefore, generally has subject-matter jurisdiction to address a dispute as to a claim of right under a contract in a declaratory-judgment action. *See* Minn.Stat. § 555.02 (2008) (stating that district court will de-

---

**1.** The district court subsequently granted respondents' motion to add a claim of unlawful impairment of contractual relations under Minn. Const. art. I, § 11.

termine questions of construction or validity arising under contract or other written instrument); *Hempel v. Creek House Trust*, 743 N.W.2d 305, 314 (Minn.App. 2007) (holding that contract claim was proper for declaratory judgment).

 An exception to the district court's broad jurisdiction exists when a claim that otherwise would be proper in a declaratory-judgment action implicates a quasi-judicial decision by an administrative agency.[2] *Tischer*, 693 N.W.2d at 429. This exception is founded on the separation-of-powers doctrine, which precludes district court review of an administrative agency's quasi-judicial decision. *Id.*

 The action of an administrative agency may be either quasi-legislative or quasi-judicial in nature. *Petition of N. States Power Co.*, 416 N.W.2d 719, 723 (Minn.1987); *City of Moorhead v. Minn. Pub. Utils. Comm'n*, 343 N.W.2d 843, 846 (Minn.1984). Quasi-legislative acts of an administrative agency affect the rights of the public generally; the validity or construction of an administrative agency's quasi-legislative act, like a claim of right under a contract, can be determined by a district court in a declaratory-judgment action. *Interstate Power Co. v. Nobles County Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn.2000) (citing *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416 (Minn. 1981)); *see also* Minn.Stat. § 555.02 (stating that district court can determine "any question of construction or validity arising under . . . statute, ordinance, [or] contract"). By contrast, quasi-judicial acts are specific, discretionary acts that affect the rights of an individual analogous to the discretionary decisions of a court proceed-

ing. *Interstate Power*, 617 N.W.2d at 574. Because an administrative agency's quasi-judicial decisions reflect discretionary decision-making, such decisions must be accorded deference by the judiciary "to avoid usurpation of the executive body's administrative prerogatives." *Tischer* 693 N.W.2d at 429. Judicial review of an administrative agency's quasi-judicial decision, "if available, must be invoked by writ of certiorari." *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992). Thus, a declaratory-judgment action purporting to assert contract claims falls outside the district court's subject-matter jurisdiction if it implicates an administrative agency's quasi-judicial decision. *See Willis v. County of Sherburne*, 555 N.W.2d 277, 282 (Minn. 1996) (involving termination of single employee).

 Appellants contend that the board's February 3, 2009 decision was quasi-judicial, and, therefore, the employees' claims implicating that decision are outside the district court's jurisdiction. We disagree. The Minnesota Supreme Court has articulated three indicia of quasi-judicial actions: "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." *Minn. Ctr. for Envtl. Advocacy v. Metro. Council*, 587 N.W.2d 838, 842 (Minn.1999) (*MCEA*). "[F]ailure to meet any of the three indicia of quasi-judicial acts as defined by *MCEA* is fatal to a claim that the proceedings are quasi-judicial." *Citizens Concerned for Kids v. Yellow Medicine E. Indep. Sch. Dist. No. 2190*, 703 N.W.2d 582, 585 (Minn.

---

2. Caselaw addressing this exception uses the terms administrative agency, administrative body, and executive body to refer to "a broad array of executive bodies," including counties and county boards. *See County of Martin v.*

*Minn. Counties Ins. Trust*, 658 N.W.2d 598, 601 (Minn.App.2003) (quotation omitted) (collecting cases). It is undisputed that appellants are included in this category.

App.2005) (citing *MCEA,* 587 N.W.2d at 842). Not one of these indicia is met here.

Because the board's decision did not involve a disputed claim, neither the first nor the third MCEA indicium is met here. Rather, the record demonstrates that the board decided to modify the health-insurance benefits because it independently concluded that the previous level of health-insurance benefits was unsustainable. To determine how to modify the health-insurance benefits, the board compared previous benefits plans, considered evidence of the county's financial constraints, and solicited input from the public, including county employees. Such a process reflects legislative decision-making. *See MCEA,* 587 N.W.2d at 842–43 (describing process that involved researching costs and needs and informally considering both favorable and unfavorable public input as legislative); *Meath v. Harmful Substance Comp. Bd.,* 550 N.W.2d 275, 277 (Minn.1996) (recognizing that many administrative decisions involve consideration of "evidentiary facts developed through investigation" but "few such decisions adjudicate any right or obligation of contending parties"). And although appellants emphasize that various employees opposed the proposed modification and threatened to initiate litigation, such opposition does not convert a legislative decision-making process into a quasi-judicial process involving the consideration of a "disputed claim."

The board also did not employ a prescribed standard to decide whether or how to modify employee health-insurance benefits. The board's only rationale was that a new health-insurance-benefits plan was needed to reduce the county's long-term financial obligation. This broad goal is not sufficiently specific to constitute a "prescribed standard." *See MCEA,* 587 N.W.2d at 843 (stating that goals statement in applicable planning document was

not "sufficiently specific to establish a prescribed standard"). And indeed, the broad range of proposals that the board considered—from virtually no modification to completely eliminating the health-insurance benefits—reflects the absence of a prescribed standard. The board's decision to modify health-insurance benefits does not demonstrate any of the indicia of quasi-judicial acts set forth in *MCEA.*

Appellants argue that the board decided that there was no preexisting contract with the employees for health-insurance benefits, which was a quasi-judicial decision. But the record does not indicate that the board directly addressed or determined the existence of a contract. Rather, the board merely referenced language in previous employee policy manuals declaring that the terms of the employee policy manuals do not constitute a contract. Any consideration of whether there was a preexisting contract for health-insurance benefits occurred as part of the board's decision to modify health-insurance benefits and is part of its rationale for that quasi-legislative decision. Nothing in the record reflects that the board considered the existence of a preexisting contract to be a disputed issue or that it took evidence or applied a prescribed standard to decide that issue. Accordingly, the record establishes neither a quasi-judicial determination as to the existence of a contract nor a quasi-judicial determination as to the modification of health-insurance benefits.

Because the board's decision to modify employee health-insurance benefits was not quasi-judicial, separation-of-powers principles do not constrain the district court's jurisdiction. The district court has subject-matter jurisdiction to determine whether the employees had a contract for health-insurance benefits as they have alleged and to conduct further proceedings

as appropriate based on its determination of that threshold issue.

## II.

Appellants also argue that the district court erred by failing to dismiss the claims of four employees [3] who are members of a bargaining unit under the Public Employment Labor Relations Act (PELRA), Minn.Stat. § 179A.01–.25 (2008). Appellants argue that these four employees lack standing because the health-insurance-benefits modification did not affect them. Although appellants presented this argument to the district court, the district court did not address it.

 Whether a person has standing to bring a claim is a question of law, which we review de novo. *Rukavina v. Pawlenty*, 684 N.W.2d 525, 531 (Minn.App.2004), *review denied* (Minn. Oct. 19, 2004). And unlike most other issues, the issue of standing may be raised at any stage of a proceeding. *Stansell v. City of Northfield*, 618 N.W.2d 814, 818 (Minn.App.2000), *review denied* (Minn. Jan. 26, 2001).

 "Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *Rukavina*, 684 N.W.2d at 531 (quotation omitted). When a challenge to standing is raised, "[t]he essential question is 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Sundberg v. Abbott*, 423 N.W.2d 686, 688 (Minn.App.1988) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)), *review denied* (Minn. June 29, 1988). Standing requires a showing of either actual injury-in-fact, or injury that is reasonably likely to occur. *See In re*

*Application of Crown CoCo, Inc.*, 458 N.W.2d 132, 135 (Minn.App.1990) ("Economic injury or the prospect of economic injury may be sufficient to establish standing.").

 It is undisputed that the four employees who are members of the bargaining unit under PELRA were subject to a status quo order issued by the Minnesota Bureau of Mediation Services (BMS). Because of the status quo order, the board expressly provided that its February 3, 2009 modification of health-insurance benefits "shall not apply to employees currently subject to any BMS status quo order until such order expires." The BMS order states that it "shall remain in full force and effect until an investigation and/or hearing has been conducted and the matter is disposed of by a determination issued by the Commissioner of the Bureau of Mediation Services." There is no indication from the record that the status quo order no longer is in effect or that the board has extended the modification decision to these four employees who were originally excluded. Although these employees assert that appellants "do[ ] not appear to take the position that [they] will not change the retirement health insurance benefit for these individuals in the foreseeable future," neither this assertion nor the record demonstrates a likely injury-in-fact as to these employees.

Because the record does not contain any evidence tending to show that the four employees exempted from the board's modification decision actually have suffered or are likely to suffer actual injury-in-fact attributable to appellants, they lack standing. Accordingly, the district court erred by failing to dismiss from this action

---

**3.** The four employees are Mary Gislason, Susan Jenson, Robert Meyer, and Daniel Sorenson.

the four employees who are members of the bargaining unit under PELRA.

### DECISION

Because respondents' declaratory-judgment action does not implicate a quasi-judicial decision of an administrative agency, the district court has subject-matter jurisdiction over respondents' claims. But four respondents lack standing to assert claims based on the administrative agency's decision because it does not affect them. The district court, therefore, erred by failing to dismiss those respondents, *see supra* note 3, from the action.

**Affirmed in part and reversed in part.**